DORÉ, Judge.
In July, 1949, Steve Neal, Jr., was in the armed service of the United States, stationed at Camp Leroy Johnson in the Par *28 ish of Orleans, Louisiana, as was one Sgt. Morris G. Patterson. The said Sgt. Patterson owned a Chrysler Fordor Sedan automobile which Steve Neal,' Jr., desired to purchase. After negotiations between the parties, Steve Neal, Jr., obtained permission from Sgt. Patterson to drive the automobile from New Orleans to Mandeville, Louisiana, for the purpose of obtaining money at his home in Mandeville to purchase the automobile. Accordingly, on July 26, 1949, the Chrysler automobile was turned over by Sgt. Patter son to Steve Neal, Jr., for his intended trip' and on that date at the hour of about 1:00 p. m., while driving on U. S. Highway No. 11 in the Parish of Orleans, Louisiana, Steve Neal, Jr., came to an “S” curve in the road known as “Dead Man’s Curve” some few miles below the Watson-Williams Bridge in the Parish of Orleans, and while in this curve the automobile, being driven by Steve Neal, Jr., and occupied by him alone, got off of the road turning over several times, resulting in the death of Steve Neal, Jr.
The parents of the deceased sue the insurers of the car for the damages sustained jy them as a result of the accident. In their suit they allege that they do not know what caused the automobile to turn over but on information and belief they allege that there was some defect in the mechanical condition of the automobile. They specifically allege, on information and belief, that the accident was caused by the defective steering wheel or steering device of the automobile and that the owner. of said automobile, Sgt. Patterson, knew of this defective steering wheel, or should have known about it. On these allegations they predicate their suit, first on the doctrine of res ipsa loquitur, and secondly, on the allegation of negligence on the part of Sgt. Patterson, the owner of the automobile, in lending the defective automobile to the deceased, knowing that the deceased was going to drive it on the highway.
After trial of the case the trial court, for written reasons assigned, rendered judgment rejecting the demands of plaintiffs. The plaintiffs have appealed.
The first question to dispose of on appeal is whether or not the doctrine of res ipsa loquitur can be invoked in this case. The plaintiffs contend that the accident speaks for itself and that there was no negligence on the part of the plaintiffs to cause the accident on which they sue and that by alleging negligence on the part of Sgt. Morris G. Patterson and his defendant insurer their case comes under the doctrine as set forth in the case of Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441. In the cited case it is shown that damage was sustained in a'fire caused by a defective acetylene cylinder delivered by the defendant. In the case at bar there' is no showing whatsoever that the automobile delivered by Sgt. Patterson had any defect whatsoever. Moreover, as brought out by the trial judge, before the doctrine of res ipsa loquitur can be applied, it is incumbent upon the plaintiffs to prove that the thing which caused the injury was under the control and management of the defendant at the time of the injury. In the instant case the plaintiffs’ son had borrowed the automobile from Sgt. Patterson for his own personal purpose of driving it to Mandeville in order to obtain money for its purchase and certainly under, those circumstances he was not acting as an employee or agent of the owner of the automobile, and control of the automobile was. entirely out of the hands of the owner at the time of the accident. See Cavaretta v. Universal Film Exchanges, La.App., 182 So. 135, 138 and 38 American Jurisprudence, Sec. 29S, p. 989. The trial judge correctly ruled that the doctrine does not apply, both for the reason that no circumstances have been brought into evidence herein except the accident itself and for the further reason that the automobile was without the control and management of the defendant or his assured and for the further reason that for the rule to apply it is necessary that the facts surrounding the-accident must be peculiarly within the knowledge of the defendant and not equally accessible to the plaintiff. As pointed out by the trial judge, the owner of the car certainly had no more knowledge as to *29 what caused this accident than did the plaintiffs herein.
Since the rule of res ipsa loquitur cannot be applied herein, the question of liability must be determined on the specific acts of negligence on the part of Patterson alleged in the petition. These specific acts of negligence are to the effect that Patterson’s automobile was in a defective mechanical condition and particularly that it had a defective steering wheel or steering device or steering apparatus and was not in a worthy condition for travel; that said defective condition was known or should have been known to Patterson and that it was negligence on his part in lending the car to the deceased in view of the aforesaid defects and in not making a careful examination of the automobile to determine defects before turning it over to the deceased; that the said negligence as aforesaid was the direct and proximate cause of the accident and the resulting death of plaintiffs’ son.
This second theory of recovery was squarely met by affirmative proof, particularly the testimony of Sgt. Patterson to the effect that his automobile had been worked on only a short time before the accident and that it was in good mechanical condition. He is corroborated by the mechanic who made the repairs. There is no evidence whatsoever to indicate any faulty steering mechanism or any other defect in the automobile which would have affected the operation thereof.
On the other hand, the evidence is clear cut to the effect that the accident occurred in a dangerous “S” curve, commonly known as “Dead Man’s Curve” at a time when the deceased was driving obviously at a rapid rate of speed. Two occupants of a beer truck testified that plaintiffs’ son passed them at a point about a quarter of a mile from this dangerous curve at a speed which they estimate between 50 and 55 miles per hour. It is further shown by the evidence that the road at the point of the accident was a blacktop road with bumps and holes therein.
Sgt. Patterson, the owner of the automobile, who went to the scene some two or three hours after the accident, testified that there was a hole on the right side of the road and from the skid marks it was apparent it was in the immediate vicinity of this hole where the car left the highway the first time. He is corroborated by other witnesses. It is further in evidence from the skid marks and other physical facts that the car ran off the road on the right, then went to the left side of the highway, back to the right side, and again to the left side before it finally came to rest, clearly showing that the driver thereof lost complete control of the vehicle because he was driving at an excessive speed on a hazardous stretch of road and not because of any defect in the mechanism of the automobile.
We cannot find any manifest error in the findings of fact of the trial court herein; on the contrary, we are firmly convinced that his conclusions are correct and we therefore affirm the judgment below.